N. B. RAY, Ex'r of Wm. Ray, v. JOHN HENRY RAY et al.

*Will—Evidence—Expert—Judge's Charge.*

1. Where, upon the trial of an issue *devisavit vel non*, a hypothetical question propounded to an expert witness embraced some facts of which no proof had been produced, and in reply to which the witness gave an opinion, but the Court instructed the jury that "if the facts assumed were not substantially proved to their satisfaction the answer should not be considered by them ;" *Held*, that any error committed in admitting the answer was cured by the charge.

2. The rejection of evidence, offered to show that the testator had been appointed to and performed the duties of important public offices after the execution of the will, unaccompanied by an offer to show that these duties were discharged with intelligence, is not error.

3. Where testimony was offered tending to show that the testator was an old man, enfeebled in body and mind by disease ; that he was easily influenced by those who possessed his confidence ; that he had made a large provision in his will for an illegitimate son who lived near him, and had also made him executor ; that he reposed great trust in this son ; that the latter had stated that he had induced the testator to send away his wife, and had made other declarations expressive of his belief in his influence over the testator ; and the will

stated the reasons which moved the testator to include the said son in his bounty, together with a declaration that if any of the other legatees or devisees should contest it they should forfeit their interest therein; *Held,* competent evidence to be submitted to the jury, to be weighed by them in determining whether the will was executed under undue influence.

This was an issue of *devisavit vel non,* tried before *Graves, Judge,* at Spring Term, 1887, of BUNCOMBE Superior Court.

There was a verdict, and judgment in accordance therewith, for the caveators, from which the propounder appealed.

The facts are stated in the opinion.

*Messrs. J. M. Gudger* and *Theo. F. Davidson,* for the propounder.

*Mr. Joseph S. Adams,* for the caveators.

SMITH, C. J. Upon the propounding of the script which purports to be the will, with a codicil thereto, of William Ray, deceased, before the clerk for probate, as such, by Nathan B. Ray, one of the executors therein named, the co-executor, Nathan Henderson, declining the trust, a caveat was entered by certain of the heirs-at-law and next of kin, and an issue framed and sent to the Superior Court of Yancey, for trial at term time, in these words: "Is the paper writing offered the will of William Ray, deceased, or any part of it?"

Upon affidavit of a caveator, the cause was removed from Yancey to Buncombe county, and came on for trial at March Term, 1887, of the Superior Court of the last-named county, before a jury, who respond in the negative as to the script and every part of it. It was thereupon adjudged by the Court that it was not the will of the deceased, and the clerk was ordered to transmit a copy of the record of proceedings to the Superior Court of Yancey, in order for further action therein according to law. The propounder appealed, after

asking for and being refused a new trial for errors in the charge, wherein it differs from the instructions prayed.

There was no controversy about the formal execution of the script, but the caveators denied the testamentary capacity of the alleged testator, or his volition, in making the instrument, from the exercise of undue and fraudulent influence on a feeble and unresisting mind, weakened by age and excessive indulgence of sensual gratifications for a long period.

The testimony is very voluminous, and is set out at length in the transcript, which we do not propose to rehearse, except as it bears upon and illustrates the exceptions taken by the propounder during the trial.

Dr. Hilliard, a witness for the propounder, an admitted expert, and who had been a resident physician in an insane asylum, was asked to answer this hypothetical question:

"If the jury shall find as a fact that for a long series of years, the alleged testator had kept his blood warm with spirituous liquors, brandy or whisky, and has so far indulged himself in venereal excesses as to have brought upon himself a disease called spermatorrhea, and in the fall of 1882 had lost the faculty which theretofore he had of multiplying $3\frac{1}{2}$ by 2, and that in the spring of 1879 he was stricken with paralysis, what then is your opinion as to the condition of his mind in the fall of 1879?

"In your opinion, would he have the will power to resist the influence of one upon whom he had long depended for advice?" Answer, "No."

The propounders objected to the hypothetical question asked Dr. Hilliard, on the grounds:

1st. The evidence did not support the supposed hypothesis.

The second question asked by the caveators, of Dr. Hilliard, was objected to on the ground that it was incompetent to give such an opinion.

The objection to the hypothesis upon which the opinion

was sought is that, if it contained statements of which no evidence had been offered in proof, and in assuming that they had been, the effect was misleading and prejudicial.

Now, while the testimony as to the mental and physical condition may have been in some particulars too strongly stated, it was shown that the deceased was addicted to excessive drinking and venereal indulgences to a degree that brought on involuntary seminal emissions, known as spermatorrhea, and about 1879 was stricken with paralysis, and was unable to multiply $3\frac{1}{2}$ by 2, to all of which there was more or less evidence. The answer was pertinent.

We do not understand, as counsel contended, that separate answers were made in the negative, which would be insensible if applied to the first inquiry. The latter clause is but explanatory, and puts the inquiry in a more specific form as to the will power capable of being called into exercise in resistance to influence brought to bear by one upon whom he had been accustomed to depend for advice. To this inquiry the response is intelligent and pertinent.

But if there were some unproved matter inserted in the supposition, and there was error in allowing the response to be given, it is cured by what is said in the charge when an instruction was asked and given in these words:

"Experts have been examined, and what is called a hypothetical question is allowed to be asked such experts. It is for the jury to decide the truth of the facts upon which the hypothetical question is asked, and if the facts assumed are not substantially proved to the satisfaction of the jury, the answer to such hypothetical question will not be considered by the jury."

The propounder proposed to prove that after the execution of the will the deceased acted as foreman of the grand jury in Yancey, and that he held office in that county. On objection, the question was disallowed, and to this ruling the propounder excepted.

It does not appear, unless inferentially, for what purpose the information was sought to be elicited, or that a favorable response was to be followed by an inquiry as to the intelligence with which the duties thus imposed were performed. The question would be pertinent only in this view, and its purpose ought to have been stated. It may be that the witness had no personal knowledge on this point, and only knew that the deceased had occupied these places. It was due to the presiding Judge to be thus informed, if the object was to proceed further in the examination, as well as conducive to a fair trial, and not leave the ruling to rest upon the naked facts of official service, in which the evidence would have been restricted to showing mental capacity. We do not, therefore, reverse the ruling of the Court under the circumstances.

Of the series of instructions prayed, nine in number, those numbered 1 and 3 (the last already set out) were given; those numbered 2, 4, 5, 6, 7, 8 and 9 were, the Judge states, given in substance, though not in very words; and a precedent, not numbered in the series, to the effect that formal execution of the will having been shown, the verdict should be that the instrument was the deceased's will, unless the caveators have proved either that the deceased was insane, or incapable, by imbecility, or had been unduly influenced, was, as we understand, also given; but the further charge prayed, that there was no evidence of any such influence having been practiced by any one, was refused. This exception has been elaborately and earnestly pressed in the argument for the appellant, and requires us to look back and see if there be such evidence as to warrant the finding of the jury.

Barnett Ray, a daughter of the deceased, speaking of the propounder, Nathan, an illegitimate son, and as such fully recognized in the script, says: " He did not live more than six or seven miles away; frequently stayed all night at my father's. At first he called him (my father) the old man; later called

him "pap." *Nath. never failed to get anything he wanted.*" "He (the deceased) was easily influenced by a man he placed confidence in." "He was weak-minded, and easily influenced. First attack of paralysis not severe; second attack worse."

T. B. Ray testified to a declaration of the appellant, in which the latter said: "I could have patted him (uncle) on the shoulder and said, not do it, and said he had cried about it."

C. W. Edwards swore that in his estimate the property disposed of in the will was worth from $18,000 to $20,000; that given to N. B. Ray, $3,000.

James Radford testified as follows: "I know Nath. Boon Ray. Had conversation with him in reference to Wm. Ray's wife. Nath. and John Henry said they were going to get his wife away. Afterwards they said they done just what they had intended, and they had got it fixed. Nath. Boon Ray said he wanted to get her away so she could not hear anthing. He said he had the old man turned against her; said they told Wm. Ray they had found some liquor there, and he was sure some one was running after her. Nath. B. Ray and John Henry said they wanted to get her away. They told me they were going to put her away. Nath. said the old man was turned against her."

The testimony of Dr. B. B. Whittington, who lived in a mile of deceased, and had known since 1849, was, that after hearing from a statement of his physical condition and its symptoms, it was to the effect that he was suffering from spermatorrhea, and he expressed the opinion that the disease under which he was laboring "had the effect to reduce brain power, and made him more liable to depression, and tended to impair the will power and ability to control his will."

These are a few of the excerpts taken from the mouths of witnesses, and there are many more in the examinations, to the same purport, that tend to show that deceased's suscepti-

bility to undue ouside influence from those who possessed his confidence, and the will itself indicates in some degree the source from which it emanates.

The instrument seems to recognize in its provisions an equal claim of all the children of the deceased and of the issue of such as have lived upon his bounty, and a disposition to deal justly with them in making an apportionment of his property.  Those to whom nothing is given are left out, because of former donations, supposed to be equal in value to the parts given to the others.  In such a case had an intestacy intervened, the result would be a re-distribution, those advanced accounting for their several advancements; thus all, in the view of the deceased, sharing equally in the estate left.  But the propounder would receive nothing, and hence he had the deepest interest in having the will made.  After the donations made in the 14th clause to this recognized natural son—about one-sixth in value of the whole estate possessed at his death—the deceased proceeds to assign reasons why he should make them, and says: "These services" (referring to what had been done by the devisee) " have been very valuable to me, and should be ever remembered by all the children of their dead mother," &c.

Again, in the 19th clause, as if to assume submission to his expressed wishes, he declares that "if any of the heirs or parties of this will *shall enter a dissent to the same to prevent its probate,* that any or all who do this shall *forfeit all right, and devise, gift, and devises made in the same to them,*" and concluded by placing in the hands of his executors the execution of his will, with large discretionary powers in the premises.

We cannot say, then, that there was no evidence of the exercise of the vitiating influence which, upon his own declarations, the propounder possessed over the mind and will of an old man who, by a long course of vicious practices resulting in paralysis, had brought his mental faculties to

great feebleness, and had so much impaired the strength of his will. The jury have found against the script, and we think the evidence warranted the adverse verdict, and of the weight due the evidence it was for them, not the Court, to determine.

There is no error, and this will be certified to the Court below for its further action in the premises.

No error.